IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

MARK E.,

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 2:25-cv-01945-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Mark E.[1] seeks judicial review of the Commissioner's final decision denying Social Security disability benefits. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

## I. Light Work Determination in the Residual Functional Capacity

The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p,

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

*available* at 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff claims the ALJ erred in determining he can perform light work rather than sedentary work.[2] Plaintiff filed a prior claim for Title II disability benefits in 2020, which was

---

[2] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a). Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

denied in 2021. *See* Tr. 69. The ALJ assigned to that claim found plaintiff was limited to sedentary work with additional physical limitations. Tr. 74.

In 2022, plaintiff filed the claim at issue in this case. This time, the ALJ assigned to the claim found that plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)" except:

- he could stand and/or walk a total of 4 hours in an 8-hour day and would need to alternate between sitting and standing every 60 minutes;

- he could never kneel, crawl, or climb ladders, ropes, or scaffolds; and

- he should avoid all exposure to unprotected heights.

Tr. 31. The ALJ further explained:

> The limitation to light work with four hours of standing and walking is supported by the claimant's lumbar, hip, and knee impairments that cause pain. This limitation is further supported by the aggravating effects of the claimant's obesity, which also supports the need to alternate between sitting/standing every 60 minutes. The limitation in kneeling, crawling, and climbing ladders, ropes, or scaffolds is also supported by these impairments, while avoiding all exposure to unprotected heights is supported by his obesity.

Tr. 31.

The ALJ explained that, under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), there is a rebuttal presumption of continuing non-disability unless the claimant rebuts the presumption by showing a changed circumstance, such as a change in the claimant's age category or an increase in the severity of the claimant's symptoms. Tr. 24. The ALJ found that plaintiff had demonstrated both and had rebutted the presumption. *Id.* The ALJ then observed that she was required to adopt the specific findings of the prior ALJ unless there was new and material evidence relating to the findings. *Id.* The ALJ found there was "sufficient new and material evidence to warrant different

findings, with the exception of the prior finding on [plaintiff's] non-severe physical impairments and non-medically determinable impairments." Tr. 24-25; *see* AR 97-4, at *3 (directing that ALJs "must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding").

Plaintiff argues that the ALJ's decision is inconsistent. On the one hand, the ALJ observed that plaintiff had rebutted the presumption by showing an increase in the severity of his symptoms, but the ALJ also found that plaintiff could now perform light work instead of sedentary work, as the prior ALJ had found. However, "even when an agency explains its decision with less than ideal clarity," this court "must uphold it if the agency's path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (simplified). Here, the ALJ's path of analysis can reasonably be discerned.

The ALJ found the opinion of state agency physician Mark Vanderburgh, M.D., to be persuasive. Tr. 35. Dr. Vanderburgh cited to portions of the medical records and observed that plaintiff has the medically determinable impairments of "lumbar DJD [degenerative joint disease], DDD [degenerative disc disease], nerve root compression, and spondylolisthesis L4-L5, severe obesity, L knee OA [osteoarthritis]/status post replacement, ongoing patellar pain" and "[b]ilat hip pain, bilat labrum tears and impingement." Tr. 124. Dr. Vanderburgh indicated that the "[s]everity of impairments and the functional impacts of pain and obesity are considered in the RFC," and opined that plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk (with normal breaks) for 4 hours and sit (with normal breaks) for six hours in an 8-hour workday. Tr. 123. Dr. Vanderburgh also opined that plaintiff should avoid climbing, kneeling, and crawling due to his knee, hip, and lumbar issues. Tr. 124.

The ALJ found: “The limitations Dr. Vanderburgh assessed accommodates his ongoing back, knee, and hip impairments while acknowledging the improvements he has gained through physical therapy and injections.” Tr. 35. The ALJ identified portions of the record that described plaintiff’s improvement with physical therapy and injections: Plaintiff testified at the hearing that he had no issues lifting and carrying and he took no medication for pain. Tr. 32; *see* Tr. 58. Medical records from January 2022 show plaintiff had 5/5 motor strength and normal reflexes. Tr. 33 (citing Tr. 756). Plaintiff attended physical therapy for low back and bilateral hip pain in 2022, after which he reported that his pain and function had improved. *Id.* (citing Tr. 781). Plaintiff received injections and reported that they provided relief, Tr. 34 (citing Tr. 784), and then returned for 13 sessions of physical therapy. *Id.* (citing Tr. 1052). Although plaintiff reported right knee pain in 2023, he had full flexion and extension, no significant swelling, and no varus or valgus laxity. Tr. 33 (citing Tr. 894). A knee x-ray in May 2023 showed plaintiff’s total knee arthroplasty was well-positioned and in good alignment, but his patella had a slight lateral tile with the possibility of some bony impingement on the lateral aspect. *Id.* (citing Tr. 803). Plaintiff returned for additional injections in 2023, and reported they were successful in relieving his hip pain bilaterally. Tr. 34 (citing Tr. 1053). He also returned for physical therapy in June 2023 and completed 16 sessions. Tr. 34 (citing Tr. 1053). In September 2023, plaintiff reported improvement and was able to pick peaches. Tr. 34 (citing Tr. 1153). Plaintiff’s relief lasted longer after each session, and in December 2023 and January 2024, plaintiff reported reduced pain and improved hip mobility. Tr. 34 (Tr. 1162). In February 2024, plaintiff stated his pain level was 3/10 in severity and his lumbar spine was 25 percent better since starting therapy. Tr. 34 (citing 1177).

The ALJ also cited to an independent physical evaluation in August 2023, which noted that plaintiff was able to groom and bathe himself, conduct basic household chores, including laundry, cooking, sweeping, and vacuuming, drive, and shop for groceries. Tr. 34 (Tr. 1112). Plaintiff had normal muscle tone and bulk throughout, his straight leg raises were negative, and he had 5/5 neuromuscular strength in all areas but bilateral leg flexion and extension, which was 4/5. *Id.* (citing Tr. 1113–14). He demonstrated reduced range of motion in all areas of the cervical spine, in forward flexion of the lumbar spine, in most areas of both hips, and in knee flexion, but all other areas were within normal limits. *Id.* (Tr. 1115–16).

Thus, the ALJ explained how there was "sufficient new and material evidence to warrant different findings." Substantial evidence in the record supports Dr. Vanderbugh's opinion and the ALJ's conclusion that plaintiff could perform light work with additional restrictions. Plaintiff claims his symptoms worsened, but the ALJ's interpretation of the record is a rational one and must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Finally, plaintiff contends the deterioration in his condition is evidenced by his need for a four-point cane, and that Dr. Vanderburgh's opinion is inconsistent with the opinions of NP Myers and Dr. Oltman who both found that plaintiff needed a four-point cane. The ALJ recognized plaintiff's use of a four-point cane, and observed that medical records indicate that plaintiff "uses a four-point cane for balance" and that "Kim Myers, ARNP, opined during her evaluation that his use of the device was medical needed." Tr. 31. Dr. Vanderburgh also observed that plaintiff "uses a cane to walk, which is medically indicated," but further observed that plaintiff was independent in personal care, takes care of his dog, cooks, cleans, gardens, drives,

shops, and attends church. Tr. 123. The ALJ found Dr. Vanderburgh's opinion most persuasive, citing to records that showed plaintiff had 5/5 motor strength throughout, normal reflexes, improvement with physical therapy (so much so that he was able to pick peaches after a session), a reported pain level of 3/10, and a 25% improvement in his lumbar spine. Tr. 35. There is no error on this basis.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED November 24, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge